## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHL Variable Insurance Company<br>    Plaintiff,<br><br>          v.<br><br>Kevin Burke,<br>     Defendant. | CIVIL ACTION NO.<br>3:13-cv-1270 (SRU) |

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff PHL Variable Insurance Company ("Phoenix") brings this lawsuit against Kevin Burke, alleging that Burke, a former Phoenix general agent, breached his Brokerage General Agent Agreement by failing to return commissions he received on several life insurance policies after those policies were rescinded. Burke acknowledges that he kept the commissions, but asserts that he was not required to return the commissions under the circumstances; Burke counterclaims for breach of contract, alleging that Phoenix unlawfully withheld additional commissions owed to him. Now before me are the parties' cross-motions for summary judgment. For the reasons discussed below, the plaintiff's motion for summary judgment (doc. # 71) is GRANTED and the defendant's motion for summary judgment (doc. # 76) is DENIED.

## I.  Background

The following undisputed facts are taken from the parties' Local Rule 56(a) statements. Phoenix is a Connecticut-based life insurance company. Burke, a citizen of California, was a brokerage general agent of Phoenix from April 2007 until his termination in May 2008. Burke's relationship with Phoenix was governed by the Brokerage General Agent Agreement (the "Agreement"), which Burke executed on April 1, 2007. Section 10.5 of the Agreement gave Phoenix the right to amend or modify the Agreement by providing written notice to Burke. The

1

Agreement was twice amended during Burke's time as a Phoenix general agent, in March 2008 and April 2008, though only the March 2008 amendment is relevant to this case.

Under the terms of the Agreement, as amended, Burke received substantial commissions as compensation for selling Phoenix products. Burke, however, was required to return commissions "if Phoenix cancel[led] or rescind[ed] a policy or contract for any reason or if the policy or contract owner exercise[d] any right to cancel a policy or contract, and, as a result, Phoenix refund[ed] or return[ed] any amount of any payment made on such policy or contract . . . ." *See* Brokerage General Agent Agreement § 3.5 and March 2008 Amendment (doc. # 71-4).

Phoenix paid Burke $1,738,515.80 in commissions on the three life insurance policies (the "Policies") at issue in this litigation. Subsequent to the Policies' issuance, the policy owners filed suit against Phoenix in California (the "California litigation").[1] Phoenix and the policy owners were able to resolve the California litigation, and executed a settlement agreement (the "Settlement") under which the Policies "are rescinded, *ab initio*, no longer exist, and are completely without legal effect." *See* Settlement Agreement 6 (doc. # 71-6). As part of the Settlement, Phoenix was required to pay the policy owners an amount of money that represented "a full return of the Premiums less a negotiated amount." *See id.* at 6-7. Phoenix asserts that the amount it owed the policy owners under the Settlement was approximately 57.77% of the premiums paid on the Policies.

---

[1] The lawsuits involved in the California litigation were coordinated in one complex coordinated action, styled *PHL Variable Insurance Company Cases*, Judicial Council Coordination Proceeding Number 4612, in the Superior Court of California, County of Santa Barbara. In the suits, the policy owners sought damages against Phoenix for "targeting" elderly individuals and convincing them to purchase multi-million dollar life insurance policies by falsely representing that the policies could be freely transferred or assigned and then refusing to recognize assignments or other transfers of ownership. *See* Pl.'s Mem. Opp. Def.'s Mot. Summ. J. Ex. B-4 (doc. # 86-11). Phoenix, in turn, filed a cross-complaint against the policy owners seeking rescission of the Policies on the grounds that they were obtained through fraudulent misrepresentations made by the policy owners. *Id.* Ex. B-5 (doc. # 86-12).

After the Settlement, Phoenix demanded that Burke pay back $1,004,300.09 in commissions he received on the Policies. Phoenix contends that the amount it ordered Burke to repay is directly proportional to the amount of the premiums it paid back to the policy owners under the Settlement – i.e., 57.77% of the total compensation Burke received on the Policies. Burke did not pay back any of the commissions he already had received. Phoenix subsequently withheld compensation from Burke that it otherwise would have owed him. As a result, Phoenix claims that Burke currently owes $379,193.16 in charged-back commissions on the Policies.[2]

Burke disputes that the money paid to the policy owners was a "return of premiums" and likewise disputes that Phoenix's demand for repayment resulted from its return of premiums to the policy owners. Burke contends that the Settlement did not trigger his obligation to charge back his commissions to Phoenix; therefore, Phoenix is engaging in unlawful "self-help" by withholding compensation that he is contractually entitled to receive.

## II.  Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398

---

[2] Burke calculates the amount as $353,451.09. *See* Def.'s Mem. Opp. Pl.'s Mot. Summ. J. 21 (doc. # 92). The disparity between the parties' calculations, however, does not create a genuine issue of material fact with respect to liability – it only impacts damages.

U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d

Cir. 1992), *cert. denied*, 506 U.S. 965 (1992) (court is required to "resolve all ambiguities and

draw all inferences in favor of the nonmoving party").  When a motion for summary judgment is

properly supported by documentary and testimonial evidence, however, the nonmoving party

may not rest upon the mere allegations or denials of his pleadings, but must present sufficient

probative evidence to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

 "Only when reasonable minds could not differ as to the import of the evidence is

summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also*

*Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving

party submits evidence that is "merely colorable," or is not "significantly probative," summary

judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will
> not defeat an otherwise properly supported motion for summary judgment;
> the requirement is that there be no genuine issue of material fact.  As to
> materiality, the substantive law will identify which facts are material.  Only
> disputes over facts that might affect the outcome of the suit under the
> governing law will properly preclude the entry of summary judgment.
> Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48.  To present a "genuine" issue of material fact, there must be contradictory

evidence "such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at

248.

 If the nonmoving party has failed to make a sufficient showing on an essential element of

his case with respect to which he has the burden of proof at trial, then summary judgment is

appropriate.  *Celotex*, 477 U.S. at 322.  In such a situation, "there can be 'no genuine issue as to

any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## III.  Discussion

Connecticut law governs interpretation of the Brokerage General Agent Agreement.[3] *See* Brokerage General Agent Agreement § 10.14. Under Connecticut law, the elements of a breach of contract claim are (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014) (citing *Maloney v. Connecticut Orthopedics, P.C.*, 47 F. Supp. 2d 244, 249 (D. Conn. 1999)).

"[O]rdinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact." *Poole v. Waterbury*, 266 Conn. 68, 88 (2003) (internal citations omitted). Where there is "definitive contract language," however, "the determination of what the parties intended by their contractual commitments is a question of law." *Id.* "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Niehaus v. Cowles Bus. Media, Inc.*, 263 Conn. 178, 188 (2003) (internal citations omitted). "[T]he language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Id.* "Where the

---

[3] In the memorandum supporting his motion for summary judgment, Burke asserts that California law governs the interpretation of the Settlement. That may be true, but the Agreement is the contract that governs the relationship between these parties. The language in the Settlement is relevant only to determining whether the Policies are rescinded. The Settlement states that it has the effect of rescinding the Policies, *ab initio*, and rendering them completely without legal effect. This language is clear and unambiguous under either Connecticut or California law.

language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Id.*

Here, it is undisputed that the parties entered into a valid, binding agreement and that the Agreement required Burke to return commissions in the event that "Phoenix cancel[led] or rescind[ed] a policy or contract *for any reason*" or "the policy or contract owner exercise[d] *any right to cancel a policy or contract*, and, as a result, Phoenix refund[ed] or return[ed] any amount of any payment made on such policy or contract." *See* Brokerage General Agent Agreement § 3.5 and March 2008 Amendment (emphasis added).  It is also undisputed that Phoenix demanded that Burke repay a portion of the commissions he received from the Policies, which mathematically corresponds to the percentage of premiums Phoenix returned to the policy owners under the Settlement.  Finally, it is undisputed that Burke did not repay the commissions.

Burke nevertheless contends that he did not breach the Agreement, because the Settlement did not trigger the provision requiring him to repay commissions if a policy is cancelled or rescinded.  Burke's entire argument is based on the language of Section 3.5.  He asserts that under the plain language of the Agreement, the requirement to pay back commissions arises only if Phoenix unilaterally cancels or rescinds a policy *or* the policy owner does; not if Phoenix and the policy owner *jointly* agree to cancel the contract as part of a settlement agreement.  Nothing in Section 3.5, however, indicates that it applies only in the event of a unilateral rescission or cancellation, or that a policy cannot be rescinded by a settlement agreement.  By its terms section 3.5 applies if Phoenix rescinds or cancels "for *any* reason" or the policy owner exercises "*any* right to cancel."  Here, the stated reason for rescinding and canceling the Policies is the Settlement, which clearly and explicitly rescinds the Policies and expressly returns a portion of the premiums to the policy owners.  Burke has presented no

6

evidence or any analogous case law suggesting that a life insurance policy cannot be rescinded or canceled by a settlement agreement.  Thus, his argument fails as a matter of law.

In sum, the parties entered into an agreement that obligated Phoenix to pay Burke commissions for selling life insurance and required Burke to pay back commissions whenever a policy that Burke received a commission on was canceled or rescinded.  With respect to the three policies in question, Phoenix fully performed under the Agreement by compensating Burke. Burke breached the Agreement by refusing to pay back $1,004,300.09 of the $1,738,515.80 in commissions that he received on the Policies after the Policies were rescinded.  Phoenix therefore was entitled to withhold compensation from Burke and Burke must make Phoenix whole by paying back the difference between $1,004,300.09 and the amount that Phoenix has withheld.

## IV.  Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment (doc. # 71) is granted and the defendant's motion for summary judgment (doc. # 76) is denied.  Judgment shall enter in favor of the plaintiff on its claim and in favor of the plaintiff/counterclaim defendant on the defendant's counterclaim.  The parties shall determine the amount in which judgment should enter and report back to the court.  If the parties are unable to agree on the amount that Burke currently owes Phoenix, the court shall hold further proceedings to determine the correct amount of the judgment.

It is so ordered.

Dated at Bridgeport, Connecticut, this 14th day of November 2014.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

7